## In re JUDICIAL CAMPAIGN COMPLAINT AGAINST BURICK.

Commission of Five Judges
Appointed By
Supreme Court of Ohio.

No. 98–2266.

Decided Jan. 22, 1999.

2

4

ORDER OF THE COMMISSION OF JUDGES.

This matter came to be reviewed by a commission of five judges appointed by the Supreme Court of Ohio pursuant to Gov.Jud.R II(5)(E)(1) and R.C. 2701.11. The commission members are Judge Charles E. Henry, Chair, and Judges Peggy Bryant, Ann Marie Tracey, Richard K. Warren, and Frederick C. Hany II.

On September 28, 1998, the complainant, Charles E. Brown, filed a complaint with the Board of Commissioners on Grievances and Discipline of the Supreme Court. The complaint alleged that the respondent, Elizabeth A. Burick [last know business address in Canton, Ohio, Attorney Registration No. 0012565], had violated various provisions of Canon 7 of the Code of Judicial Conduct by disseminating campaign advertisements and other materials that contained false or misleading information about her opponent or that contained pledges or promises of conduct in office other than the faithful and impartial performance of judicial duties. Following a review by a probable cause panel of the board pursuant to Gov.Jud.R. II(5)(C)(1)(a) and based on instructions from that panel, the Secretary of the Board of Commissioners on Grievances and Discipline filed a formal complaint alleging that the respondent, during the course of a judicial campaign, committed four separate violations of Canon 7 of the Code of Judicial Conduct:

- Knowingly misrepresented certain facts in campaign communications concerning her opponent, Judge Sara Lioi, namely, stating, "Less than one year ago, the political bosses appointed a new judge to our courts." This statement was alleged to constitute a violation of Canon 7(B)(2)(f) and (E)(1). (Count I.)

- Made, in writing and in television advertisements, pledges and promises of conduct in office regarding use of the death penalty, namely, "Elizabeth Burick will be a tough Judge that supports the death penalty and isn't afraid to use it," and "Burick favors the death penalty for convicted murderers." These statements were alleged to constitute violations of Canon 7(B)(2)(c) and (d). (Count II.)

- Authorized her campaign committee or others working on her behalf to make false and misleading statements regarding a criminal case pending on the docket of Judge Sara Lioi, namely, referring to a criminal defendant, sentenced by Judge Lioi, as a rapist and alleging that this individual received a lenient sentence, when in fact the defendant pleaded guilty to a charge of sexual battery and received the maximum sentence. These statements were alleged to be in violation of Canon 7(B)(2)(e) and (f), (E)(1), and (F). (Count III.)

- Disseminated a campaign letter dated July 13, 1998 and other campaign material that falsely implied that she held the position of judge, contained misleading statements regarding sentencing practices, and falsely stated that she had received labor union and Fraternal Order of Police endorsements. These statements were alleged to constitute violations of Canon 7(B)(2)(f), (D)(1) and (10), (E)(1), and (F). (Count IV.)

On October 23, 1998, a hearing panel appointed by the Board of Commissioners on Grievances and Discipline conducted a hearing on the allegations contained in the formal complaint. On October 26, 1998, the hearing panel issued its findings of fact, conclusions of law, and recommendations in this matter.[1] The hearing panel concluded that the communications and activity alleged in Counts I, II, and III of the formal complaint constituted violations of the cited provisions of Canon 7. With regard to the violations alleged in Count IV, the hearing panel concluded that the respondent did not falsely imply that she currently held the position of judge, mislead the public with respect to her potential sentencing practices, or falsely state the nature of endorsements she received from labor unions and the Fraternal Order of Police.

In assessing the severity of the respondent's misconduct, the hearing panel found that the respondent failed to address these violations after they had been

---

1. The hearing panel's report is attached to this order as Appendix A.

called to her attention and that she continued to broadcast and distribute the offending campaign advertisements and other materials through the date of the hearing. The hearing panel recommended sanctions including a public reprimand, a $5,000 fine, and a cease and desist order. The panel further recommended that the respondent be ordered to pay the complainant's attorney fees and be assessed the costs of these proceedings.

Subsequent to the date that the hearing panel's report was issued, the respondent filed three documents on October 27, 28, and 30, 1998. In these filings, the respondent certified that she had ceased and desisted from disseminating the statements found by the hearing panel to be in violation of Canon 7 and outlined the efforts, following the October 23 hearing, to withdraw campaign advertisements and literature containing these statements. The filings also contained statements to the effect that the respondent accepted responsibility for the violations found by the hearing panel and agreed to abide by and comply with the sanctions recommended by the hearing panel.

On October 27, 1998, the Supreme Court of Ohio appointed a five-judge commission to review the hearing panel's report pursuant to Gov.Jud.R. II(5)(E)(1). The commission was provided with the record certified by the Board of Commissioners on Grievances and Discipline, a complete transcript of the October 23, 1998 proceeding before the hearing panel, and the exhibits presented at that hearing.

The commission met by telephone conference on October 30 and November 30, 1998 and January 13, 1999. Following the initial telephone conference, the commission issued an order allowing the parties the opportunity to file written briefs and requiring the respondent to cease and desist from further disseminating the statements found by the hearing panel to be in violation of Canon 7. Following the second telephone conference, the parties were ordered to submit information regarding the complainant's attorney fees and costs. The briefs and other materials filed by the parties were considered by the commission in reviewing the record and the hearing panel's report and recommendation.

█ Pursuant to Gov.Jud.R. II(5)(E)(1), we are charged with reviewing the report of the hearing panel and have discretion in establishing procedures used to conduct our review. However, the legal standard governing our review goes beyond the abuse-of-discretion standard argued by the respondent in her reply brief. Rather, Gov.Jud.R. II(5)(E)(1) requires that we independently review the record before us and ascertain whether clear and convincing evidence exists to support a determination that the respondent violated Canon 7.

The commission affirms the findings of fact and conclusions of law made by the hearing panel as they relate to Counts I, II, and III of the complaint. Respondent's advertisements alleging that her opponent was appointed by political bosses, when in fact the appointment was made by the Governor, were false and misled the public as to the process prescribed in Section 13, Article IV of the Ohio Constitution for filling vacancies in judicial office. Attorneys, and especially those who are seeking election to judicial office, have an obligation to further, not obscure, the public's understanding of the law and legal system. While judicial candidates may point out that they or their opponents have benefited from the constitutional appointment process and acknowledge the role that politics plays in this process, statements in this regard should be accurate so as to enhance the public's understanding of the process. Statements such as those made by the respondent in this instance fail to satisfy this standard and constitute clear and convincing evidence of a violation of Canon 7(B)(2)(f) and (E)(1).

The commission also agrees with the hearing panel's conclusions that the respondent's statements regarding her support for and intended use of the death penalty constitute clear and convincing evidence of a violation of Canon 7(B)(2)(c) and (d). While these statements may be appropriate in nonjudicial elections, judicial candidates must guard against making statements in the course of their campaigns that adversely reflect on their impartiality. At the very least, the respondent's statements imply to a reasonable person that she will use the death penalty in a capital case regardless of the evidence produced during the mitigation phase of trial and notwithstanding the statutory standards a judge or jury must consider in determining the appropriateness of the death penalty. As such, these statements are contrary to the prohibitions contained in Canon 7(B)(2)(c) and (d).

With regard to the statements concerning Judge Lioi's sentencing that are cited in Count III of the complaint, we note that Canon 7(B)(2)(e) does not require us simply to ascertain whether the case on which respondent was commenting was pending on her opponent's docket. Rather, the question is whether the case was pending on the docket of *any* judge at the time the statements were made. As noted in *John Ken Alzheimer's Ctr. v. Ohio Certificate of Need Review Bd.* (1989), 65 Ohio App.3d 134, 138, 583 N.E.2d 337, 339, "[t]he Supreme Court of Ohio has previously defined the term 'pending' to include actions which a lower tribunal has finally adjudicated, but from which an appeal has not yet been taken. See *Hupp v. Hock–Hocking Oil & Natural Gas Co.* (1913), 88 Ohio St. 61, 66–71, 101 N.E. 1053, 1055–1056, and *Bode v. Welch* (1875), 29 Ohio St. 19, 22. See, also, *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 104, 522 N.E.2d 489, 494, fn. 3."

■ Judge Lioi's judgment entry imposing sentence on the defendant was filed on August 21, 1998. The defendant had thirty days from that date to file a notice of appeal and did so on September 15, 1998. According to the testimony of the parties, the statements in question were made between these two dates. Using the Supreme Court's definition cited above, the case was pending during this period of time, and the respondent's statements were in violation of Canon 7(B)(2)(e).

■ We also find clear and convincing evidence that these statements violate Canon 7(B)(2)(f), (E)(1), and (F). The survey conducted on behalf of the respondent's campaign stated that the defendant "repeatedly raped" a minor victim, for which he received a sentence of "only five years." The record indicates that the defendant did not plead guilty to and was not convicted of multiple rapes, but instead pleaded guilty to a single charge of sexual battery, for which he was sentenced to the maximum term of incarceration allowed by law. These statements obviously convey false and misleading information regarding the disposition of the criminal case and misrepresent facts related to the trial judge's consideration and disposition of this case.

■ The hearing panel concluded that the statements referred to in Count IV of the complaint were not contrary to Canon 7(B)(2)(f), (D)(1) and (10), (E)(1), and (F). As required by Gov.Jud.R. II(5)(E)(1), we conducted an independent review of Count IV and reject, in part, the findings and recommendations of the hearing panel. We agree with the hearing panel that the respondent's statements relative to her intention to immediately punish offenders and make creative use of alternative sanctions do not violate the cited provisions of Canon 7. Similarly, the respondent's conditional use of the term "your Judge" and apparently inadvertent placement of the word "judge" on her letterhead do not constitute a violation of Canon 7.

■ The July 13 letter distributed by the respondent indicates that she is "proud to have received the Union endorsements." The respondent also broadcasted and distributed information stating that she had been "endorsed by Fraternal Order of Police." A judicial candidate may convey information regarding endorsements that the candidate has received during the course of the campaign but must do so in a truthful and accurate manner. In *In re Judicial Campaign Complaint Against Roberts* (1996), 81 Ohio Misc.2d 59, 675 N.E.2d 84, our colleagues reviewed campaign literature circulated by a candidate for the Seventh District Court of Appeals. That candidate stated in his literature that he was endorsed by the "legal community" in the district when, in fact, he had been endorsed by only one county bar association in the seven-county district.

The judicial commission in *Roberts* concluded that this statement falsely stated the endorsement of an organization in violation of Canon 7(D)(10).

After reviewing the statements made by the respondent and the holding in *Roberts,* we conclude that the respondent's statement that she received "the Union endorsements" would lead a reasonable person to conclude that the respondent had received all of the union endorsements in the contested race, when in fact both candidates had received labor union endorsements. The record supports a finding by clear and convincing evidence that the respondent knowingly violated Canon 7(E)(1) by distributing information concerning her candidacy that, while technically true, was misleading and deceiving.

Similarly, the respondent's use of the phrase "endorsed by Fraternal Order of Police," while to some degree true, is, at the same time, misleading and deceiving. The Fraternal Order of Police endorsement communicated by the respondent was the endorsement of one lodge of the Fraternal Order of Police. While the respondent's communication was truthful, her failure to identify more specifically the nature of the FOP endorsement, such as by including the name of the lodge that issued the endorsement, made the statement misleading and constitutes clear and convincing evidence that the respondent violated Canon 7(D)(10).

We are aware of respondent's contention that she had permission from officers of the Fraternal Order of Police to use the endorsement in this manner and the fact that the hearing panel relied on this evidence in concluding that the respondent's use of the endorsement was not contrary to Canon 7. However, a judicial candidate is not relieved from compliance with Canon 7 simply because a third party authorizes a particular type of campaign conduct or communication. To allow a defense such as that put forth by the respondent would allow a judicial candidate to disclaim responsibility for even the most egregious violations of Canon 7 simply by producing evidence that his or her conduct was sanctioned by a third party. The Supreme Court and previous five-judge commissions have made it clear that judicial candidates must independently measure the propriety of their actions against the standards contained in Canon 7 and will be held accountable should their conduct fall short of the required principles. See Canon 7(F) and *In re Judicial Campaign Complaint Against Hildebrandt* (1997), 82 Ohio Misc.2d 1, 4, 675 N.E.2d 889, 891.

## SANCTIONS

As noted previously, the hearing panel recommended that the respondent be publicly reprimanded, fined $5,000, and ordered to pay the complainant's reason-

able and necessary attorney fees and the costs of these proceedings. For the reasons set forth below, we modify the sanctions recommended by the panel.

■■■■■ The processes provided for pursuant to Gov.Jud.R. II(5)(E)(1) serve dual purposes of punishing behavior in violation of the Ohio Code of Judicial Conduct and informing the legal and judicial communities of appropriate campaign conduct. *In re Judicial Campaign Complaint Against Morris* (1997), 81 Ohio Misc.2d 64, 65, 675 N.E.2d 580, 581–582. The statements disseminated by the respondent in violation of Canon 7 have lessened the public's understanding of the judicial system and damaged the reputation of her opponent as a jurist. When viewed in its entirety, respondent's conduct during this campaign is contrary to the overarching principle of Canon 7 that judicial candidates should conduct their elections campaigns in a dignified and appropriate manner.

Moreover, the respondent did not commit a single, isolated violation of Canon 7. Rather, we have found clear and convincing evidence of six separate violations involving ten different provisions of Canon 7. We also note the evidence in the record that indicates that the respondent failed to take immediate and effective steps to withdraw her campaign advertisements and literature once the hearing concluded. Under these circumstances, we find that a public reprimand coupled with a fine of $7,500 to be a more appropriate sanction to serve the dual purposes of punishment and deterrence.

After considering the evidence related to attorney fees and expenses properly submitted by the parties and the factors contained in DR 2–106(B), we order the respondent to pay the complainant $5,000 in attorney fees and expenses.

Accordingly, it is the unanimous conclusion of the judicial commission that the respondent be publicly reprimanded and fined $7,500 for her violations of Canon 7 of the Code of Judicial Conduct. The respondent also shall pay the complainant's attorney fees and expenses totaling $5,000 and the costs of these proceedings.

The Secretary shall issue a statement of costs before this commission and instructions regarding payment of all monetary sanctions. Payment of all monetary sanctions shall be made on or before May 24, 1999. The respondent's public reprimand shall be published by the Supreme Court Reporter of Decisions in the manner prescribed in Gov.Bar R. V(8)(D)(2).

*So ordered.*

CHARLES E. HENRY, Chair, PEGGY L. BRYANT, ANN MARIE TRACY, RICHARD K. WARREN and FREDERICK C. HANY, JJ., concur.

## APPENDIX A

Before the Board of Commissioners On Grievances
and Discipline of the Supreme Court of Ohio

Case No. 98–J–03

Decided Oct. 27, 1998

In re: Judicial Campaign Complaint Elizabeth Burick

Elizabeth Burick *RESPONDENT*

Charles E. Brown *COMPLAINANT*

*FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND RECOMMENDATION OF
THE HEARING PANEL*

This matter came to be considered pursuant to a hearing by a duly authorized panel of the Board of Commissioners on Grievances and Discipline ("board") on October 23, 1998, pursuant to Jud R. II, Sec. 5 and Gov.Bar R. V, upon a judicial campaign complaint filed against Elizabeth Burick [last known business address in Canton, Ohio, Attorney Registration No. 0012565] by complainant Charles E. Brown. The hearing panel consisted of Richard Campbell of Franklin County, a past lay member of the board; Judge Harry White of Belmont County, a past member of the board; and chairman, attorney David S. Bloomfield of Franklin County, a past member of the board. As required by Gov.Jud.R. II, Sec. 5(C)(1), none of the members of the panel is a resident of the judicial district from which the complaint arose.

### I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Respondent Elizabeth Burick is admitted to the practice of law in the State of Ohio and is a judicial candidate for the Stark County Common Pleas Court for the November 1998 election.

Respondent is a first-time candidate for judicial office, and her opponent is the current judge, having been appointed to that office.

Regarding Counts I and II in the complaint before the panel, respondent in the course of the judicial campaign in campaign literature whether in print or on television stated:

1. "Less than one year ago the political bosses appointed a new judge to our courts"; and

2. "Elizabeth Burick will be a tough judge who **supports the death penalty and isn't afraid to use it.**"

The ads and or literature are still being used as of the date of the hearing, according to the testimony of the respondent, notwithstanding the notification of the matter to respondent by various means, including the complaint and probable cause finding. Further, the respondent and or counsel for respondent at the hearing agreed to the impropriety of said statements and agreed to stop their use.

The respondent testified that she relied upon a newspaper article that stated that the complainant had made a statement concerning the appointment of her opponent. The complainant is the Republican County Chair of Stark County. Said article indicated indirectly that complainant took credit for the appointment. Respondent admitted that the complainant did not make the appointment, nor could he at law. She knew then and knows now that only the Governor of Ohio may make an appointment. The respondent excused her actions by stating repeatedly that she had no malicious intent. In fact, the respondent would like the panel to ignore any violation on the basis of her statement that there was no intent to violate Canon 7. The respondent did attend the mandatory 1998 Judicial Candidates Seminar. However, she apparently did not understand what transpired, as the two statements above are clear violations of Canon 7. It is unfortunate that the respondent does not understand or acknowledge her error and appreciate the gravity of it.

The panel clearly regards the statement "Less than one year ago the political bosses appointed a new judge to our courts" to be a violation of Canon 7(B)(2)(f) and 7(E)(1). Such language in print or otherwise in judicial campaign literature is totally inappropriate. The politicization of the judiciary is not a goal and is to be discouraged and frowned upon by the bar. However, that is what the respondent has done herein.

The statement "Elizabeth Burick will be a tough judge who supports the death penalty and isn't afraid to use it" is a clear violation of Canon 7. The respondent knows and stated so at the hearing that it is impermissible for judicial candidates to espouse a position on a matter likely to come before the court for which they are running, especially one as volatile as the death penalty. To make the above statement is wrong. To excuse it by stating that she did not intend to violate the rules is no excuse. Further, the respondent stated that her source of permission to make the statement was three items: a campaign letter from the current Governor of Ohio in a prior judicial race, an ad for a candidate for municipal court in a previous election, and a July 1997 commentary by a member of the Supreme Court of Ohio concerning his personal opinion of Canon 7. It stretches credibility

to accept that such would be a source for a legal determination of the magnitude being proffered by the respondent herein. The panel is very troubled with the respondent's statements in this matter and the way in which she handled them once they were brought to her attention. The respondent agreed to stop the dissemination of that statement only when she came to the hearing. She had ample opportunity to correct the blatant error before the hearing but chose not to do so. Thus, the panel finds a clear and obvious violation of Canon 7(B)(2)(c) and (d).

In the third count of the complaint, respondent has denied all culpability because of her noninvolvement in the matter. The matter concerns a survey that the respondent's campaign commissioned apparently with little or no oversight by the respondent. Among the questions asked which the respondent did not review in advance was:

"In a recent case, Judge Sara Lioi (lee-Oy) reduced two charges of rape for a man who repeatedly raped a girl for ten years, starting when she was four years old."

The respondent admitted at the hearing that not only did she not review the question before it was asked but it was not a fully correct statement. Her excuse was that she had not reviewed the matter and did not intend to violate Canon 7. A candidate who does not control his or her own campaign is nonetheless responsible for that campaign and everything that the campaign disseminates in the candidate's name. The panel recognizes that innocent mistakes can be made; however, this is no innocent mistake, and to hide behind the obvious neglect of not overseeing one's own judicial campaign is unacceptable to the panel. Such an excuse is an insult. The respondent failed to cure the problem once again when the chance arose by the statements to her from the complainant and the probable cause panel. She decided to wait until the very last minute to inform the panel that a mistake had been made. Her testimony was less than forthright, she had memory problems, and she was unwilling to accept responsibility except when pressed.

The respondent propounded the argument that the matter was not pending before Judge Lioi and was therefore subject to fair comment. The fact that the poll in question containing the inflammatory question was a few days subsequent to the sentencing but during the pendency of an appeal does not alter the fact that the case was on the docket of Judge Lioi and therefore a pending matter. If whether the case was pending were the only question in this case, then the panel might feel obliged to listen to respondent's statement that her campaign did it without her involvement. That is not acceptable under these circumstances. The respondent refuses to take responsibility here again for her campaign, and in

doing so tries to abdicate responsibility that is clearly hers. She knew of and approved the purchase of a survey as well as the contents generally. She helped to supply the material on the underlying case in the survey. The mandatory seminar was of little benefit to respondent in this regard.

It is the opinion of the panel that there is a clear violation of Canon 7(B)(2)(e), (f), 7(E)(1) and especially Canon 7(F).

As regards Count IV, the complained-of conduct can be found in a campaign letter of July 13, 1998. The following items are the subject of that count:

1. The insertion of the name "Elizabeth A. Burick" between the words "Common Pleas" and "Judge." The respondent stated that this was an unintended and unnoticed error that, when caught, was corrected immediately. There was nothing to contradict the respondent in this regard, and the panel finds the respondent's testimony to be credible in that regard, and from the viewing of the matter does not find a violation of Canon 7.

2. The statement "I am proud to have received the Union endorsements." The panel finds that this statement is not either entirely true or false. Union endorsements were made on behalf of the respondent, but use of the article "the" created some confusion or mistake. However, that does not rise to the level of a violation of Canon 7 by clear and convincing evidence.

3. The statement "My goal as your Judge." The panel does not find that this statement tries in any way to indicate that the respondent claims to be a current judge. Thus this does not rise to the level of a violation of Canon 7 by clear and convincing evidence.

4. The statement "in my court there will be immediate punishment" is not found to be misleading as explained by respondent. Respondent stated that this meant as soon as punishment could be made and within the law. The panel finds that the wording may not have been the best but is not a violation of Canon 7 by clear and convincing evidence.

5. The statement "I will be creative with the use of community service and other programs, so that there is no longer a mockery of the courts." That is perhaps not the best choice of words. The panel accepts the statement by the respondent that there was no implication that she called our courts a mockery. The panel does not find this matter to be a violation of Canon 7 by clear and convincing evidence.

6. The last matter in Count IV was the statement concerning endorsement by the Fraternal Order of Police ("FOP"). The respondent had received an endorsement from one lodge of the FOP, while her opponent had received the endorsement from another larger lodge of the FOP. Both lodges were within the judicial

jurisdiction in question. The complained-of statement is "Endorsed by Fraternal Order of Police." However, the respondent produced a letter from the endorsing FOP stating, "Just because your opponent was endorsed by another lodge you can still state that you have the endorsement of the Fraternal Order of Police." That is sufficient to support a finding that this allegation is not proven as to a claimed violation of Canon 7 by clear and convincing evidence.

While complainant Charles E. Brown wanted to raise other matters not in issue, there were only four issues on which the panel took testimony and evidence. Those issues are found in the complaint as Counts I, II, III, and IV.

The basic facts herein are not in dispute. The only dispute is whether these facts constitute a violation of the Judicial Canons, specifically Canon 7. For the reasons stated hereinabove, it is the finding of this panel that respondent has violated Counts I, II, and III and that Count IV will be dismissed.

Respondent must take the credit or blame for her actions as a candidate for judicial office and for those of her committee. Respondent has been unwilling to do so except when pressed. Respondent attended a judicial seminar on this very matter. There are clear violations of Canon 7. The Supreme Court should not tolerate such conduct.

Respondent's conduct and lack of supervision of her campaign demean the judiciary and cause the respondent to have failed to maintain the dignity appropriate to the judicial office she seeks. She is to be held accountable for herself and her campaign. To hide behind the wording in Canon 7(F) regarding responsibility only if the candidate knew of the action is disingenuous. Her recurring statement that she knew nothing about matters that involved clear violations of Canon 7 is not credible. She knew of the statements made in her campaign literature and the basics involved in the survey. To claim otherwise is not credible. Therefore, the panel finds a lack of complete candor and an ongoing violation of Canon 7(F) herein as regards the first three counts of the complaint.

## RECOMMENDATION

The panel does not view this as a case involving mere technical violations of the Ohio Code of Judicial Conduct. It is especially disconcerting to know that the respondent as a candidate for judge was not aware of the clear violations of Canon 7 and when they were pointed out to her did not correct them immediately. Lawyers and judges are held to a high standard and are licensed to behave according to a set of rules that others do not have to follow. The judicial rules are clear, and it is very disheartening to hear an aspiring jurist try to explain away obvious errors, as was the case herein, with the recurring statements that

she did not mean to violate the canons or that it was done without her input by her campaign. For candidates for judge these are unacceptable excuses based on this record. Whether specific harm was done or not is speculative, but there is no speculation that the entire judicial campaign process was harmed by the actions of the respondent herein.

As a result, it is the recommendation that respondent cease and desist from using the literature and ads involved in Counts I, II, and III in any form or forum and make it very clear what she is trying to say in any further campaign statement whether written or oral by whomsoever in her campaign.

Were it within the power of the panel to require the respondent to apologize for her violations herein we would require it. She has lessened the judicial campaign process by her violations.

This truly reflects poorly on the office of judge and does not maintain the dignity appropriate to a judicial candidate or the office she is seeking to hold or retain.

Also, because of the nature of the violation and respondent's continued use of the literature and ads in question even after the matter came to her attention, a fine should be imposed. Therefore, this panel recommends that there be a fine imposed in the amount of $5,000.

Because of the proximity to the election and the fact that the violation was ongoing at the time of the hearing despite repeated indications to the respondent that the matter should be stopped and because the respondent did not attempt to remedy the situation, this panel believes that the respondent should be publicly reprimanded by the Ohio Supreme Court for her conduct.

It is the further recommendation of the panel that the Ohio Supreme Court consider this matter on an expedited basis unless the respondent were to cease and desist on her own and certify same to the Supreme Court. All literature and ads must be pulled forthwith and reviewed for content by the respondent and if necessary her counsel. The weak statement by the respondent at the hearing that she intends to do so and will do her best given the constraints of time and television is unacceptable. The violating material must be removed forthwith.

Therefore, it is the recommendation of this panel that a violation of Canon 7 be found. Further, the respondent must cease and desist from the conduct set forth in Counts I and II. Additionally, the respondent should be fined in the amount of $5,000. Last, it is the panel's recommendation that the respondent receive a public reprimand from the Supreme Court of Ohio.

Further, the costs of this proceeding should be taxed to the respondent as well as the reasonable and appropriate costs of the complainant, including attorney

fees of the complainant. The amount of such fees shall be filed with the Ohio Supreme Court.

Respectfully submitted this 26th day of October 1998.

DAVID S. BLOOMFIELD, Chairman, HARRY WHITE, J., and RICHARD CAMPBELL, concur.