[Cite as *State v. Price*, 2026-Ohio-688.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

        Plaintiff – Appellee

-vs-

ALONZO DAVID PRICE

        Defendant – Appellant

Case No. 2025 CA 00048

Opinion And Judgment Entry

Appeal from the Stark County Court of Common Pleas, Case No. 2024 CR 2418

Judgment:   Affirmed

Date of Judgment Entry: February 27, 2026

**BEFORE:** ANDREW J. KING, P.J., WILLIAM B. HOFFMAN, J.**,** KEVIN W. POPHAM, J.; Appellate Judges

**APPEARANCES:** KYLE STONE, CHRISTOPHER PIEKARSKI, for Plaintiff-Appellee; D. COLEMAN BOND, for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}   Defendant-Appellant Alonzo David Price ("Price") appeals his conviction after a jury trial in the Stark County Court of Common Pleas. For the reasons below, we affirm.

**Facts and Procedural History**

{¶2}   On January 3, 2025, the Stark County Grand Jury indicted Price on one count of felonious assault in violation of R.C. 2903.11(A)(1)/(D)(1)(a), a felony of the second degree; two counts of abduction in violation of R.C. 2905.02(A)(1)/(C) and (A)(2)/(C), felonies of the third degree; one count of domestic violence in violation of R.C.

2919.25(A)/(D)(4), a felony of the third degree; and one count of criminal damaging or endangering in violation of R.C. 2909.06(A)(1)/(B), a misdemeanor of the second degree.

{¶3}   Price proceeded to a jury trial. The jury found him not guilty of the abduction charges, domestic violence, and criminal damaging or endangering. The jury was unable to reach a verdict on the felonious assault charge, and the trial court declared a mistrial as to that count. Price was subsequently retried on the felonious assault charge.

{¶4}   The evidence at retrial established the following.

**Testimony of the victim, M.L.**

{¶5}   M.L. testified that she had been in a relationship with Price and lived with him for slightly more than one year. On November 18, 2024, the couple argued throughout the day. When M.L. attempted to leave the residence, Price forcibly intervened. M.L. testified that she called 9-1-1, but Price took her phone during the call and removed its battery and SIM card. *1T. at 179-180, 198.*

{¶6}   M.L. testified that, as she moved toward the exit, Price pulled her backward to the ground and "stomped" on her knee. M.L. heard her knee crack and immediately experienced severe pain. *1T. at 180.* Unable to stand, she crawled into the bathtub and asked Price to call for an ambulance, which he refused. *1T. at 181.*

{¶7}   Later that day, after Price fell asleep, M.L. used Price's phone to text her mother, stating: *"Call police. Being held hostage. He broke my leg." 1T. at 166; State's Exhibit 1.*

{¶8}   M.L. testified that she was transported to Aultman Hospital, where she learned her knee was broken. She underwent surgery on December 2, 2024, and was

unable to walk for an extended period. At the time of trial, she continued to wear a brace and attend physical therapy. *1T. at 184-185.*

{¶9} M.L. also testified that she continued to communicate with Price in the months following the incident and that she still cared for him. Recorded jail calls between M.L. and Price discussing the incident were admitted into evidence. *1T. at 187-190.*

**Testimony of M.L.'s mother**

{¶10} S.C., M.L.'s mother, testified that although the message did not originate from M.L.'s phone number, she recognized it as coming from her daughter based on the reference to Price's nickname. *1T. at 164-166.* S.C. testified that the message also instructed her not to call back so as not to wake Price. S.C. immediately had her son call 9-1-1. *1T. at 167-171; State's Exhibit 3.*

**The Investigation**

{¶11} Canton Police officers responded to the residence in the afternoon of November 18, 2024. Officer Elvis Drevon testified that Price initially gave a false name, refused to open the door, and communicated only through a window. Although officers heard moaning inside the apartment, they were unable to make visual contact with M.L. *1T. at 139.* Officer Alva Watkins, whose prior testimony was read into the record, testified that he briefly saw M.L. through a window, but she did not respond to questions and turned away.[1] *1T. at 265-267.*

{¶12} Later that evening, officers returned to the residence. Officer Christian Paris testified that M.L. reported she had been unable to speak to officers earlier because Price held a pillow over her head. *1T. at 220-221.* Detective Robert Hubner testified that M.L.

---

[1] Officer Watkins was not available to testify in person during Price's retrial. The trial court allowed Officer Watkins testimony from the first jury trial to be read into evidence.

was found seated with her leg elevated, in visible distress, and that even slight movement caused her intense pain. *Id. at 231-232.* Detective Hubner testified that inside the apartment he found a cell phone without a battery. *Id. at 233.* He later spoke with M.L. at the hospital, where she reported that Price had thrown her to the ground and "stomped" on her knee. *Id. at 236.* Photographs of her injuries taken at the hospital were admitted into evidence. *Id. at 236-241.*

**Disposition**

{¶13} Price did not testify or present witnesses. The jury found Price guilty of felonious assault. The trial court sentenced Price to an indefinite prison term with a minimum sentence of eight years and a potential maximum sentence of twelve years.

**Assignments of Error**

{¶14} Price raises two assignments of error for our consideration,

{¶15} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED."

{¶16} "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AND MUST BE REVERSED."

**I.**

{¶17} In his first assignment of error, Price argues the evidence was insufficient to support his conviction for felonious assault. He contends the State failed to prove that he *knowingly* caused serious physical harm to M.L. We disagree.

**Standard of Review — Sufficiency of the Evidence**

{¶18} Sufficiency of the evidence is a question of law reviewed de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30. The inquiry is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991). This review does not involve weighing evidence or assessing credibility. *Id.* A conviction will be reversed on sufficiency grounds only where reasonable minds could reach but one conclusion—acquittal. *State v. Ketterer*, 2006-Ohio-5283, ¶ 94.

**Governing Law and Application**

{¶19} R.C. 2903.11(A)(1) – Felonious Assault - provides that no person shall knowingly cause serious physical harm to another. "Serious physical harm" includes harm involving substantial incapacity, prolonged or intractable pain, or acute pain resulting in substantial suffering. R.C. 2901.01(A)(5).

{¶20} Price does not dispute that M.L. suffered serious physical harm. He argues only that the evidence failed to establish he acted *knowingly*, asserting instead that the evidence showed recklessness and that M.L.'s testimony was inconsistent.

{¶21} A person acts knowingly when he is aware that his conduct will probably cause a certain result. R.C. 2901.22(B). By contrast, recklessness involves awareness of a risk that the result *may* occur. R.C. 2901.22(C). If the result is probable, the conduct is knowing; if merely possible, it is reckless. *In re Judicial Campaign Complaint Against Emrich,* 75 Ohio St.3d 1517 (1996); *State v. Hardman*, 2016-Ohio-498, ¶ 38 (8th Dist.).

{¶22} Criminal intent is a question for the jury and may be inferred from the act itself and surrounding circumstances. *State v. Garner*, 74 Ohio St.3d 49, 60 (1995); *State v. Ashcraft*, 2023-Ohio-2378, ¶ 22 (5th Dist.).

{¶23} Here, M.L. testified that Price grabbed her from behind as she attempted to leave, threw her to the ground, and "stomped on her knee." She immediately experienced severe pain, required hospitalization and surgery, and suffered prolonged incapacity. To "stomp" means to strike the ground - or an object - forcefully with the foot, often in anger. *https://www.britannica.com/dictionary/stomp (accessed Feb. 12, 2026).* From this evidence, a rational trier of fact could conclude that Price was aware his conduct of stomping on M.L.'s knee would probably cause serious physical harm to M.L. Whether M.L.'s testimony contained inconsistencies goes to weight and credibility, not sufficiency, and is beyond the scope of this review.

{¶24} Viewing the evidence in the light most favorable to the State, sufficient evidence supports the jury's finding that Price knowingly caused serious physical harm to M.L.

{¶25} Price's first assignment of error is overruled.

## II.

{¶26} In his second assignment of error, Price argues that his conviction is against the manifest weight of the evidence, contending that M.L.'s testimony was inconsistent and therefore not credible. We disagree.

**Standard of Review- Manifest Weight of the Evidence**

{¶27} A manifest-weight challenge addresses the persuasive force of the evidence. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. The reviewing court considers

whether the greater amount of credible evidence supports one side of the case rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶28} In this role, an appellate court acts as a "thirteenth juror," reviewing the entire record, weighing the evidence and reasonable inferences, and considering witness credibility to determine whether the jury clearly lost its way and created a manifest miscarriage of justice. *State v. Jordan*, 2023-Ohio-3800, ¶ 17; *Thompkins* at 387.

{¶29} This standard is deliberately deferential. Because the jury directly observes the witnesses' demeanor, tone, and manner of testifying, its credibility determinations are entitled to great weight. *Eastley* at ¶ 21; *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, reversal is reserved for the exceptional case in which the evidence weighs heavily against conviction. *Thompkins* at 387. Moreover, all three judges on the panel must concur before a conviction may be reversed on manifest-weight grounds. Ohio Const., Art. IV, § 3(B)(3).

**Analysis**

{¶30} Price argues that M.L.'s testimony was unreliable because she could not recall every detail of the incident and provided inconsistent accounts. The record does not support this claim.

{¶31} M.L. consistently testified that Price grabbed her from behind as she attempted to leave the apartment, threw her to the ground, and "stomped" on her knee, causing immediate and severe pain. Her testimony was corroborated by medical evidence establishing that she suffered a broken knee requiring hospitalization, surgery, and prolonged rehabilitation. Price does not dispute that he caused the injury; rather, he claims it was accidental - an argument the jury was free to reject.

{¶32} The jury, as the trier of fact, was entitled to evaluate the credibility of the witnesses and resolve any conflicts in the evidence. It could believe all, part, or none of the testimony presented. *State v. Antill*, 176 Ohio St. 61, 67 (1964). Minor inconsistencies do not render testimony incredible, nor do they transform a conviction into a manifest miscarriage of justice. *See State v. Craig*, 2000 Ohio App. LEXIS 1138, *10 (10th Dist. Mar. 23, 2000).

{¶33} Although the State's case that Price acted "knowingly" relied in part on circumstantial evidence, such evidence is entitled to the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991), paragraph one of the syllabus.

{¶34} After independently reviewing the record and weighing the evidence, we find no indication that the jury lost its way or that Price's conviction represents a manifest miscarriage of justice.

{¶35} Price's second assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to be paid by Appellant, Alonzo David Price.

By: Popham, J.

King, P.J. and

Hoffman, J., concur